```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF VIRGINIA

                      Alexandria Division


DPR CONSTRUCTION, INC.,      )
                             )
     Plaintiff,              )
                             )
         v.                  )       1:05cv259(JCC)
                             )
IKEA PROPERTY, INC.,         )
                             )
     Defendant.              )
```

## **M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Defendant IKEA Property Inc.'s Motion to Dismiss or Transfer or Compel Arbitration. For the reasons stated below, the Court will deny IKEA's Motion to Dismiss, deny IKEA's Motion to Compel Arbitration, and grant IKEA's Motion to Transfer.

### **I. Background**

Plaintiff DPR Construction, Inc. ("DPR") is a California corporation engaged in the business of commercial and industrial construction. DPR's principal place of business is located in Redwood City, California. Defendant IKEA Property, Inc., ("IKEA") is a Delaware corporation engaged in the business of retail sales of household and consumer goods. IKEA's principal place of business is located in Plymouth Meeting, Pennsylvania. DPR filed suit against IKEA on March 9, 2005, alleging three counts of breach of contract.

A.  Count I (the Potomac Mills Contract)

Count I involves a contract between DPR and IKEA, entered into on August 14, 2000, under which DPR agreed to manage the construction of an IKEA retail store at Potomac Mills, Virginia (the "Potomac Mills Contract").  DPR commenced work on the Potomac Mills store on July 27, 2000.

On February 25, 2002, DPR and IKEA entered into an agreement (the "Potomac Mills Agreement") in order to resolve, *inter alia*, several change order disputes.  Pursuant to the Potomac Mills Agreement, DPR agreed to complete a specified punchlist dated February 19, 2002 (the "Potomac Mills Punchlist") and to complete certain items identified as additional work.  IKEA agreed to make final payment to DPR under the Potomac Mills Agreement following completion by DPR of the Potomac Mills Punchlist and within 15 days of receipt of an invoice for the sums due and owing to DPR.  DPR claims that it completed the Potomac Mills Punchlist and additional work authorized by IKEA on February 21, 2003.

DPR claims that it has met all conditions specified in the Potomac Mills Agreement.  On September 24, 2004, DPR submitted to IKEA an invoice seeking payment of a $191,000 outstanding balance allegedly owed to DPR.  DPR claims that IKEA is wrongfully withholding payment to DPR under the Potomac Mills Agreement, in breach of the Potomac Mills Agreement.

B.  Count II (the College Park Contract)

Count two involves a contract entered into on March 5, 2002, between DPR and IKEA under which DPR agreed to manage the construction of an IKEA retail store in College Park Maryland (the "College Park Contract").  Under the College Park Contract, IKEA agreed to pay DPR a fee of $811,000 and a lump sum General Conditions Fee of $1,078,734.  DPR commenced work on the College Park store on March 5, 2002 and claims that it timely completed its work and met all of its contractual obligations under the College Park Contract.

On January 29, 2004, DPR and IKEA entered into an agreement (the "College Park Agreement") to resolve, *inter alia*, disputes regarding pending change orders and the establishment of final subcontract amounts.  Pursuant to the College Park Agreement, IKEA retained $100,000 to secure the performance of punchlist work (the "College Park Punchlist").  DPR claims that it worked diligently toward completion of the College Park Punchlist but that on April 28, 2004, IKEA wrongfully attempted to terminate DPR and ordered DPR to vacate the site of the College Park project by May 5, 2004.  DPR claims that IKEA is wrongfully withholding payment to DPR of $100,000.  DPR claims that in wrongfully attempting to terminate DPR and refusing to pay DPR, IKEA has materially breached the College Park Agreement.

C.  Count III (the College Park Service Agreements)

Count III involves several individual agreements to perform service work at the College Park site (the "Service Agreements"). DPR claims that it has completed its work and met all of its contractual obligations under the Service Agreements and that IKEA is wrongfully withholding payment of $85,146.86.

D.  IKEA's Counterclaims

On April 27, 2005, IKEA filed an Amended Answer and three count Counterclaim. These Counterclaims involve the same contracts at issue in Counts I - III. IKEA claims that DPR's deficiencies at the Potomac Mills site have resulted in monitoring and anticipated remediation costs in excess of $500,000 (Counterclaim I). IKEA claims that DPR's deficiencies with regard to the College Park Contract have resulted in costs in excess of $1,800,000 (Counterclaim II). Finally, IKEA claims that DPR's deficiencies with regard to the Service Agreements have resulted in costs in excess of $140,000 (Counterclaim III).

E.  IKEA's Motion to Dismiss or Transfer or Compel Arbitration

IKEA argues that the Court should dismiss this case because of DPR's failure to join an indispensable party. IKEA's architect on both the Potomac Mills and College Park projects, MCG Architecture ("MCG"), has asserted claims[1] against IKEA for amounts allegedly due on these properties. IKEA claims that the problems it has experienced at both projects necessarily fall

---

[1] MCG has not yet filed suit, but it has threatened to do so. (Aff. of Brian Akelaitis, Def. Mem. Supp., Ex. 1, ¶¶ 15 and 16).

4

within one of two categories: they are either design flaws or construction flaws. If they are design flaws, MCG would be accountable. If they are construction flaws, DPR would be accountable. IKEA argues that unless MCG is joined in this action, IKEA faces a substantial risk of incurring multiple, inconsistent or double obligations from multiple actions arising from the same facts and circumstances.

IKEA requests that if the Court does not believe dismissal is warranted, it should transfer venue to the Eastern District of Pennsylvania, where both MCG and DPR's presence may be compelled.

In the event the Court declines to dismiss or transfer, IKEA requests that the Court dismiss and compel arbitration on Count I while staying or dismissing Counts II and III.

## II. Standard of Review

A Rule 12(b)(7) motion to dismiss for failure to join an indispensable party requires a two-step inquiry. *See* Rule 19, Fed. R. Civ. P.; *S. Co. Energy Mktg., L.P. v. Va. Elec. & Power Co.*, 190 F.R.D. 182, 185 (E.D. Va. 1999)(Ellis, J.)(citing *Owens-Illinois Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999)). First, it must be determined whether a party is "necessary" pursuant to Rule 19(a). *S. Co. Energy*, 190 F.R.D. at 185 (citing *Owens-Illinois*, 186 F.3d at 440). Second, if a necessary party is unavailable for some reason, it must be determined whether the

party is "indispensable" to the case, in that the party's appearance is so essential that the case must be dismissed. *Id.* Analysis of necessity and indispensability under Rule 19 is not a mechanistic process, however, and "the court must consider the practical potential for prejudice in the context of the particular factual setting presented by the case at bar." *S. Co. Energy*, 190 F.R.D. at 185 (citing *Schlumberger Indus. Inc., v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1286 (4th Cir 1994)).

With respect to IKEA's motion to transfer venue, 28 U.S.C. § 1404(a) instructs:

> For the convenience of the parties and witnesses, in
> the interest of justice, a district court may transfer
> any civil action to any other district or division
> where it might have been brought.

28 U.S.C. § 1404(a). This rather ambiguous standard has been interpreted to require consideration of the following four factors: (1) the plaintiffs' choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice. *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256-62 (E.D. Va. 1988)(Ellis, J.). The interest of justice factors include such circumstances as the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, [and] the possibility of harassment. *GTE*

*Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999)(Spencer, J.)(citations and quotations omitted).  In applying these factors, a court must remember that the plaintiff's choice of forum is entitled to substantial weight, and should be abandoned only if the defendant can show that it is clearly outweighed by other factors.  *Id.*

With respect to IKEA's motion to compel arbitration, the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 and 4, provides that in a suit brought in any of the courts of the United States:

> upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3.  If there is a failure or refusal to arbitrate under a written agreement, an aggrieved party may petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

In ruling on a motion to compel arbitration, a court must resolve two issues: first, "the court must determine whether a binding arbitration agreement exists between the parties to this suit. Second, the court must determine whether the dispute falls within the parameters of the arbitration agreement." *Gibbs v. PFS Invs. Inc.*, 209 F. Supp. 2d 620, (E.D. Va. 2002); *see also*

*Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001).  If "the court determines that an agreement exists and that the dispute falls within the scope of the agreement, it then must refer the matter to arbitration without considering the merits of the dispute." *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997). However, a party may seek to revoke an arbitration agreement by challenging the underlying contractual formation. 9 U.S.C. § 2; *see also Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996)("generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2.").

### III. Analysis

A.  IKEA's Motion to Dismiss

IKEA argues that MCG is an indispensable party that cannot be joined in this case because it is not subject to this Court's jurisdiction.[2]  As stated above, in addressing this motion, the Court must address the following questions: First, whether MCG is a necessary party to this action; Second, if necessary, whether MCG is an indispensable party.

IKEA argues that the problems at both the Potomac Mills and College Park projects are either design problems, for which

---

[2] This Court may in fact have specific jurisdiction over MCG for the claims arising from the Potomac Mills, Virginia, contracts, but as MCG is not subject to general jurisdiction in Virginia, this Court probably does not have jurisdiction over the claims arising from the College Park, Maryland, contracts.

8

MCG is liable, or construction problems, for which DPR is liable. MCG and DPR have discussed the problems at the sites and each of them believes that the major problems are the responsibility of the other. (Aff. of Brian Akelaitis, Def. Mem. Supp., Ex. 1, ¶¶ 23-25). It is possible, therefore, that this Court could determine that all defects were design defects, and enter judgment in favor of DPR on all its claims, while another court, in a separate action, could find that all the defects were construction defects and award MCG the amounts it seeks. In other words, judgments in two separate courts could leave IKEA in the position of losing in both cases due to conflicting determinations as to whether the defects were design or construction defects. Accordingly, MCG is a necessary party in this case. *See, e.g., Delta Fin. Corp. v. Paul D. Commanduras & Assocs.*, 973 F.2d 301, 305 (4th Cir. 1992)(parties to a contract, and others having a substantial interest in it, are necessary parties)(citations omitted).

DPR disputes MCG's status as an indispensable party, citing *So. Co. Energy*, 190 F.R.D. at 185-87, where Judge Ellis distinguished between inconsistent adjudications and inconsistent obligations. However, the Fourth Circuit has made no such distinction. To determine whether MCG is an indispensable party, the Court must analyze the following four factors:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or

9

> those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b); *Schlumberger*, 36 F.3d at 1286.

Hearing this action without MCG's presence will prejudice IKEA due to the possibility of irreconcilable verdicts in separate courts. For the same reason, a judgment rendered without MCG's presence may be inadequate. The circumstances indicate that MCG is an indispensable party. *See Schlumberger*, 36 F.3d at 1285-88 (finding that insurers were indispensable parties where the possibility existed that due to inconsistent verdicts in separate courts, plaintiff could be "whipsawed" and wind up with less than full coverage even though it was entitled to full coverage). This prejudice can be lessened by having the matter heard as one case in a court where all three entities are subject to jurisdiction. Rather than dismissing this case, the Court will transfer the case to the Eastern District of Pennsylvania as discussed below.

B.   IKEA's Motion to Transfer Venue

IKEA requests, if the Court is unwilling to dismiss this action for failure to join an indispensable party, that the Court transfer this matter to the Eastern District of Pennsylvania. DPR argues that it is not subject to jurisdiction

in Pennsylvania, and that if the Court determines that transfer is appropriate, the District of Maryland, Greenbelt Division, is the most appropriate forum.

Pennsylvania's long arm statute extends to the limits allowed by due process. *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001). In contract cases, to determine whether jurisdiction is appropriate, a court "must consider the totality of the circumstances, including the location and character of the contract negotiation, the terms of the contract, and the parties' actual course of dealing." *Id.* (citation omitted). DPR is not subject to general jurisdiction in Pennsylvania. DPR argues that it is not subject to specific jurisdiction in Pennsylvania, because it does not maintain an office in, nor is it a resident of, Pennsylvania. DPR does not own or lease real property in Pennsylvania and does not have a bank account or mailbox in Pennsylvania. The contracts were to be performed in Virginia and Maryland and are governed by Maryland and Virginia law.

IKEA claims that DPR is subject to jurisdiction based on its dealings with IKEA's headquarters in Pennsylvania. IKEA has already initiated action in the Eastern District of Pennsylvania against both MCG and DPR for claims arising out of the Woodbridge and College Park contracts.[3]

---

[3] For purposes of this motion, the Court assumes that MCG is subject to jurisdiction in Pennsylvania for claims arising out of both the College Park and Potomac Mills contracts. Neither DPR nor IKEA has argued this point.

11

The following facts lead the Court to conclude that DPR is subject to specific jurisdiction in Pennsylvania on all claims and counterclaims in this case:

(1) Almost all of DPR's invoices were delivered to IKEA in Pennsylvania;

(2) DPR traveled to Pennsylvania to solicit business from IKEA on the Potomac Mills project;

(3) IKEA executed the Potomac Mills Contract in Pennsylvania;

(4) DPR met with IKEA in Pennsylvania to discuss IKEA's qualifications for the College Park Project;

(5) DPR executed the College Park Contract in Pennsylvania; and

(6) The College Park Agreement was negotiated and executed in face-to-face meetings in Pennsylvania.

DPR solicited business and executed the contracts at issue in Pennsylvania, rendering it subject to specific jurisdiction in Pennsylvania.  In the interest of justice, rather than subject IKEA to the possibility of inconsistent adjudications in separate courts (i.e., the "whipsaw" effect discussed in *Schlumberger*), the Court will transfer this case to the Eastern District of Pennsylvania.

C.  IKEA's Motion to Compel Arbitration

IKEA requests that if the Court does not dismiss the case for failure to join an indispensable party or transfer the case to the Eastern District of Pennsylvania, it should compel

arbitration on Count I.  Contrary to IKEA's assertions, it does not appear that Count I is subject to an arbitration agreement.  In any case, as this case will be transferred to the Eastern District of Pennsylvania, this motion is moot.

### IV. Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss, grant Defendant's Motion to Transfer, and deny Defendant's Motion to Compel Arbitration.  An appropriate Order shall issue.

July 6, 2005                              /s/ James C. Cacheris
Alexandria, Virginia             UNITED STATES DISTRICT COURT JUDGE